UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
Syracuse Division

| | |
|---|---|
| LAURA A. GIBSON,<br><br>        Plaintiff,<br><br>vs.<br><br>KENNETH JOSEPH GREEN, LLC.,<br><br>and<br><br>KELLY GREEN,<br><br>        Defendants. | Civil Action No. 5:19-CV-0214 (DNH/ATB)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF ACTION

1. Plaintiff Laura Gibson brings this action for declaratory, injunctive, and monetary relief against Kenneth Joseph Green, LLC, and Kelly Green (collectively "Defendants") for discrimination in the rental of housing based on disability. This action arises under the federal Fair Housing Act ("FHA") of 1968, as amended, 42 USC §3601 *et seq*, and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 *et seq*.

2. Plaintiff has suffered housing discrimination on the basis of disability due to Defendants' refusal to make reasonable accommodations and/or modifications thereby denying Plaintiff an equal opportunity to use and enjoy her dwelling.

3. Ms. Gibson is a person with a disability which substantially limits her major life activities. She suffers from multiple sclerosis which has progressively impaired her mobility, leaving her unable to walk. Complications from her medical condition keep her primarily confined to bed and house-bound.

1

4. Ms. Gibson lives in an apartment that she has rented from the Defendants since 2016. Her apartment is over one hundred twenty feet down the hall from the locked building entrance. Due to her disability, Ms. Gibson is unable to travel to the front entrance to let anyone in. There is no management office or reception desk at the premises with staff to open the front door. There is no buzzer entry for the front door. As a result, Ms. Gibson is unable to admit guests to her home.

5. Ms. Gibson's lifeline since moving to the property has been visits from two home health aides and her daughter. They enable her to access necessities such as essential health and personal care, groceries, rides to appointments, family visits, or simply leave her house. Because Ms. Gibson cannot let them in the front door, she has provided her two health aides and her daughter each with a key. There has never been a problem at the property as a result of Ms. Gibson giving her key to these three people.

6. Ms. Gibson has requested from Defendants a reasonable accommodation and/or modification in the form of either a remote front door buzzer, or a lock box with key code that she could provide to her guests. This reasonable accommodation and/or modification is necessary for Ms. Gibson to have an equal opportunity to use and enjoy her dwelling despite her disability. Defendants have repeatedly refused her requests for such reasonable accommodation and/or modification.

7. Defendants refuse to give Ms. Gibson a method of directly letting guests in. The only option Defendants have given to Ms. Gibson is to give a key to guests, but Defendants demand criminal background checks at Ms. Gibson's expense in order to grant or deny written approval to anyone coming Ms. Gibson would have come to her home. The now-expired lease agreement

provided that the tenant would "not give keys to individuals not residing in the unit without prior written approval of the landlord." The lease makes no mention of background checks.

8. Defendants have withheld written approval and have demanded that the keys be turned over to the landlord. Defendants claim that Ms. Gibson is in violation of her lease and have refused to renew her lease.

9. Ms. Gibson seeks the ability to have guests, such as her pastor or friends from church, visit her in her home, just as any other tenant may do. The ability to have guests is especially important as Ms. Gibson is primarily home-bound.

10. Ms. Gibson joined a pooled trust account in August 2019 in order to become financially eligible for Medicaid-funded home health care. The pooled trust company mails Ms. Gibson's rent payments to the Defendants on or about the fifth day of each month. As a reasonable accommodation, Ms. Gibson asked Defendants to establish a new rent due date and in fact proposed a specific date each month. Defendants have not agreed to a specific new rental due date and on multiple occasions asserted that late payment would "terminate the lease".

11. In response to Ms. Gibson's requests for accommodation of her disability, Defendant property manager Kelly Green repeatedly has told Ms. Gibson that she could move out and stated that her landlord would not renew her lease, and in fact has refused to renew her lease.

12. After Ms. Gibson enrolled in Medicaid, she was approved to receive home health care services through a Home Health Agency. As a reasonable accommodation to her disability, Ms. Gibson asked defendant to install a buzzer remote front door lock, or alternatively a lock box with key code that she could provide to the home health aides, nurses, and therapists who would begin visiting her home.

13. Defendants eventually installed a lock box at the front entrance but refuse to provide Ms. Gibson the code. Without Ms. Gibson's knowledge or consent, Defendants made direct contact with the Home Health Agency currently managing Ms. Gibson's care, Nascentia, and provided them with the lock box code and demanded that the code remain confidential to Nascentia employees.

14. Ms. Gibson remains unable to have guests because she cannot let them into the building. She has been unable to utilize professional medical transportation because Nascentia arranges medical transportation in her area through a third-party organization.

15. Due to Defendants' accusations of lease violation, their refusal to establish a modified rent due date, their repeated statements that Ms. Gibson could move out, and their failure to renew her lease, Ms. Gibson lives in fear of eviction.

16. Defendants have made discriminatory statements to and about Ms. Gibson regarding her disability, including that they would be "more than happy" to let her move out due to her "medical condition" in response to her requests for reasonable accommodation and/or modification.

17. Defendants have failed to make reasonable accommodations and/or modifications to allow Ms. Gibson an equal opportunity to use and enjoy her dwelling. Through their unlawful and discriminatory actions, Defendants have violated Ms. Gibson's right to be free from discrimination based on her disability.

## JURISDICTION AND VENUE

18. This Court has jurisdiction of this action under 28 USC §§ 1331, 1343(a)(3) and (4) and §2201 and 42 USC §3613.

19. This Court has the authority to grant declaratory and injunctive relief against the Defendants pursuant to 28 USC §§2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure, respectively.

20. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) because that claim arises out of the same transactions as Plaintiff's federal claim, such that it is part of the same case or controversy.

21. The venue for this action properly lies in the United States District Court for the Northern District of New York pursuant to 28 USC §1391(b). The claims arose, and the Defendants conduct their business in this judicial district.

## PARTIES

22. Plaintiff Laura Gibson is an adult female with physical disabilities that substantially limit her major life activities. Ms. Gibson resides in Pennellville, New York in an apartment that she has rented from Kenneth Joseph Green, LLC since January 1, 2016.

23. Defendant Kenneth Joseph Green, LLC, upon information and belief, is an active New York State domestic limited liability company with its principle executive office located in Phoenix, New York, and which filed with the New York Department of State on October 4, 2013. Upon information and belief, Kenneth Joseph Green, LLC owns and manages the residential premises alternately known as "Pennellville Greenview Apartments" and "Pennellville Senior Living Center" located in Pennellville, New York.

24. Upon information and belief, Defendant Kelly Green is a property manager for Kenneth Joseph Green, LLC and is employed by Kenneth Joseph Green, LLC.

25. In acting or omitting to act as alleged herein, Defendant Kenneth Joseph Green, LLC was acting through its employees and/or agents and is liable based on the acts and omissions of its employees and/or agents.

26. In acting or omitting to act as alleged herein, each employee or officer of Defendant Kenneth Joseph Green, LLC was acting within the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employer or officer as agent were subsequently ratified and adopted by Defendant Kenneth Joseph Green, LLC as principal.

## STATEMENT OF FACTS

27. Laura Gibson is an adult female with a disability that substantially limits one or more life activities. She suffers from multiple sclerosis, a chronic, typically progressive disease involving damage to the sheaths of nerve cells in the brain and spinal cord, whose symptoms may include numbness, impairment of speech and of muscular coordination, blurred vision, and severe fatigue. As a result of her disability, Ms. Gibson cannot walk and uses a mobility power scooter. She is primarily confined to her bed and is house-bound. She cannot drive and depends upon other people for transportation. Ms. Gibson requires daily assistance from home health aides as well as periodic nursing care and physical therapy. She has been approved to receive those in-home services through a Medicaid-funded health provider.

28. Ms. Gibson lives alone in her apartment in Pennellville, New York ("the Property"), which she has leased from Defendants since January 1, 2016. Her income includes Social Security Disability Insurance (SSDI) income, Survivors Benefits from the Veterans Benefits Administration, and a pension from the United States Office of Personnel Management. Her income is presently managed by a pooled trust account.

29. In November 2015, Ms. Gibson responded to a listing on Craigslist for a rental apartment at "Pennellville Senior Living Center." Ms. Gibson visited the property with her home health aide at the time, Stephanie Cordner, where they met with property manager Kelly Green. Ms. Gibson used her mobility scooter and Ms. Cordner drove her to the appointment. Ms. Gibson told Ms. Green that due to her disability, she would not be able to unlock the front entrance for her aide and would therefore need to give her aide keys to the property should she rent it.

30. Ms. Gibson signed a one-year lease agreement on November 12, 2015. The lease was signed by Ms. Gibson and Ms. Green, and listed the parties to the agreement as "the owner of Pennellville Senior Living Center, Kenneth Joseph Green, LLC" and Laura Gibson. The lease term was from January 1, 2016 to January 1, 2017. Due to having a lease at her prior home, she did not move into the property until about April 2016. However, Ms. Gibson paid rent on both apartments during that period because Ms. Green insisted that the lease must begin on January 1, 2016, even though only three of the approximately fourteen or more apartments were occupied.

31. The parties signed a one-year lease each year for three consecutive years. However, since expiring on January 31, 2019, Defendants have refused to execute a new written lease despite repeated requests from Ms. Gibson. The property now does business as "Pennellville Greenview Apartments." Monthly rent is $750.

32. Ms. Gibson's apartment is about 120 feet from the front door of the building. Due to her disability, Ms. Gibson is unable to walk to the front door and is generally confined to bed. There is no remote system to unlock the front door from her apartment so as a result, Ms. Gibson has no way to let anyone in the building.

33. In August 2018, Ms. Gibson joined a pooled trust service. A pooled trust is a special type of trust that allows individuals to become financially eligible for public assistance benefits (such

as Medicaid) while preserving their resources in trust for supplemental needs (such as rent). A pooled trust is a trust established and administered by a non-profit organization. A separate account is established for each beneficiary of the trust, but for the purposes of investment and management of funds, the trust pools these accounts. The pooled income trust debits the funds out of Ms. Gibson's account and then issues checks to pay for her expenses, such as rent.

34. On August 29, 2018, Ms. Gibson called Ms. Green to inform her that going forward, the pooled trust would be sending the rent payments which might result in a few days of delay each month. Ms. Gibson asked Ms. Green if she could pay late due to the trust issuing the checks and if necessary include a late fee of $25.00 each month. Ms. Green denied her request and stated that it would be unfair to make an exception just for her.

35. During their conversation, Ms. Gibson told Ms. Green that she anticipated that she would soon receive home health services through a Medicaid managed program that would send home health aides. Up until that time, Ms. Gibson had been paying out of pocket for two home health aides, each of whom was known to Ms. Green. Ms. Green had been to the property regularly since Ms. Gibson moved in two and half years earlier and had spoken with her two aides on many occasions while on the property including in the common areas and in Ms. Gibson's apartment. Although nothing in the lease mentions a criminal background check requirement in order obtain the landlord's "written approval" to provide a key to the property to a third party, Ms. Gibson's first aide had provided information to Defendants and had undergone a criminal background check. However, despite repeated requests, Defendant Green failed to provide "written approval." In approximately April 2016, Ms. Gibson's new home health aide, Jessica Winghart, completed a form with the necessary information and authorizing a background check

as requested by Ms. Green. However, Ms. Green failed to pick up the document from Ms. Gibson's apartment as she indicated that she would do.

36. A few hours after their August 29, 2018 conversation, Ms. Green sent Ms. Gibson an email stating "I am unable to agree to your request to pay a $25.00 late fee each month in order for you to move forward and retain the services of a Pooled Income Trust company," maintaining that late payment would terminate her lease. In addition to denying Ms. Gibson's request to modify her rent due date due to the administration of the pooled trust, Ms. Green suggested that Ms. Gibson move out by giving thirty days written notice due to a "medical issue." Ms. Green continued in her email that "each time you hire a new aide a $40.00 fee is required to perform a background check."

37. The following day, on August 30, 2018, Ms. Gibson's daughter Lisa Palleschi called Ms. Green to discuss her mother's reasonable accommodation request. Ms. Palleschi discussed the pooled income trust and the monthly due date of the rent. Ms. Green replied that if Ms. Gibson paid late three times she would be in default of her lease. Ms. Palleschi explained that the pooled trust is set up for Medicaid eligibility and reiterated that Ms. Gibson is looking for an accommodation in the payment date due to her disability. Ms. Green responded that "she can break her lease with us if she wants to." Ms. Palleschi replied that her mother did not want to move, she wanted a reasonable accommodation. Ms. Green said that they were not in the business of "accommodating sick people" and said that she would be "more than happy" to let Ms. Gibson out of her lease. Ms. Palleschi reiterated that her mother was not looking to leave.

38. On September 5, 2018, Katie Frawley-Clarke, Director of Enforcement at CNY Fair Housing, Inc, called Ms. Green on Ms. Gibson's behalf. CNY Fair Housing is a nonprofit corporation organized under the laws of the State of New York with its principal place of

business in Syracuse, New York. The mission of CNY Fair Housing is to eliminate housing discrimination, promote open communities, and ensure equal access to housing opportunity for all people in Central and Northern New York.

39. Ms. Frawley-Clarke addressed the delayed rent payments from the pooled trust company, the need for home health aides, and the lack of a buzzer system for Ms. Gibson to admit visitors without traveling to the main entrance. Ms. Green asked if Ms. Gibson is could pass a "medical exam that she is capable of living on her own" and said that "our building does not do assisted living or accommodate people with any special needs." Ms. Green stated to Ms. Frawley-Clarke that Ms. Gibson could break her lease because of her medical issue and stated that she would "be making sure that we're not going to renew her lease." Ms. Frawley-Clarke repeatedly stressed that Ms. Gibson did not wish to break her lease and was seeking reasonable accommodation and/or modification.

40. On September 6, 2018, Ms. Frawley-Clarke wrote a letter which she emailed and mailed to Ms. Green making reasonable accommodation requests on Ms. Gibson's behalf. She requested an extension of the rental payment due date to accommodate the payment from the trust. She requested waiver of the rule, policy, or practice of requiring background checks of home health care service providers. She requested a modification in the form of a door lock release. On September 18, 2018, Ms. Frawley-Clarke called Ms. Green who indicated that she wanted to perform background checks or receive copies of background checks on visiting home health aides or nurses or receive a note from their employer that they had undergone background checks.

41. During a telephone conversation on September 19, 2018, Ms. Green told Ms. Frawley-Clarke that if Defendants installed a buzzer system, they would start charging late fees. Ms. Green said, "we'll let the lawyers handle it from here."

42. On October 1, 2018, Ms. Frawley-Clarke received a letter from counsel for Defendant Kenneth Joseph Green, LLC. In the letter, counsel stated that his client is not required to install a door lock-release mechanism and that additional keys may be distributed only to individuals who have undergone background checks by Defendants at Ms. Gibson's expense. No specific amended due date was established for rent payment.

43. On October 9, 2018, Ms. Frawley-Clarke called counsel to discuss his letter. Ms. Frawley-Clarke stated that Ms. Gibson is not asking that copies of the key be given to individual aides. She proposed a lock box with key code since there was no buzzer system.

44. On November 6, 2018, Ms. Frawley-Clarke drafted a second reasonable accommodation request letter emailed and mailed to Defendants' counsel and to Ms. Green. On November 13, 2018, Ms. Frawley-Clarke received an email from Defendants' counsel which stated that the landlord was willing to install a lock box in the vestibule and would provide the code to anyone who completed a criminal background check at the tenant's expense. It further stated that the landlord would accept third party background check performed by an employer within a certified agency, and that providing the lock box code to anyone who does not have a background check on file with the landlord would be a default under Ms. Gibson's lease.

45. On December 13, 2018, Plaintiff through her attorney emailed Defendants' attorney a reasonable accommodation request explaining that Plaintiff anticipated receiving home health aides and visiting nurses through a Medicaid-affiliated Home Health Agency, Nascentia Health, in January 2019. The letter detailed the process that the New York State Department of Health

uses to screen prospective home health aides. The letter requested a lock box with key code or remote access lock for Ms. Gibson.

46. On December 20, 2018, Plaintiff's attorney again emailed Defendants' counsel regarding the reasonable accommodation request. Defendants' attorney indicated via email that his client needed additional time. On December 27, Plaintiff's attorney again emailed Defendants' attorney to stress that the delay was causing harm to Ms. Gibson, including the possible loss of her home health services. On January 1, 2019, Plaintiff's attorney again emailed Defendants' counsel to emphasize the urgency of the matter and to obtain clarification as to whether the Defendants intended to offer Ms. Gibson a lease renewal as her current lease was to expire on January 31, 2019. Defendants' attorney replied on January 1, 2019 that he would discuss the email with his client.

47. On January 9, 2019, Petitioner through her attorney again contacted Defendants' counsel seeking a response to her requests for reasonable accommodation and/or modification, also attaching a proposed federal complaint.

48. On January 10, 2019, Defendants' counsel emailed Petitioner's attorney indicating that the landlord would install a lockbox at the entrance to the building by early the following week and provide the code to Ms. Gibson to pass along to the home health aides. The email warned against providing the code or keys to any person not employed by the Nascentia, specifically singling out Ms. Gibson's aide of two and a half years Jessica Wingate, and Ms. Gibson's daughter Lisa Palleschi. Defendants' counsel alleged that the lease required background checks obtained at the tenant's expense.

49. While not required by the lease to do so, on January 11, 2019 Plaintiff by her attorney provided Defendants with a letter from her daughter's employer, Syracuse Habitat for Humanity,

demonstrating that she passed their credit and background checks seven months earlier, as well as the employer's criteria. Defendants by counsel dismissed this background check as insufficient for granting permission for Ms. Gibson's daughter to continue to come to her mother's home.

50. On January 14, 2019, Ms. Gibson by her attorney contacted Defendants' counsel to inform the Defendants that Ms. Gibson was scheduled to begin receiving services through the Home Health Agency (Nascentia) the following morning at 11 a.m. and inquired when Defendants intended to install the lock box and provide key code as had been represented on January 10.

51. On January 16, 2019, a day after a physical therapist was scheduled to evaluate and work with Ms. Gibson at her home, counsel for the Defendants responded that Defendants installed a lock box at the entrance and, without Ms. Gibson's knowledge or consent, directly contacted her Home Health Agency Nascentia. Defendants by counsel further demanded return of Ms. Gibson's daughter's key and the key of Ms. Gibson's aide Ms. Wingate. Defendants further stated that Ms. Gibson was in violation of her lease due to her daughter and her aide having a key.

52. On January 17, 2019, Plaintiff through her attorney emphasized to Defendants' counsel that Ms. Gibson's daughter has visited the property for some time without incident, that she provided an employer's recent criminal background and credit determination on her daughter and stressed the need for her daughter to visit to help her, bring her food, and take her to appointments. Plaintiff by counsel again inquired as to her lease renewal, as her lease would expire in fourteen days.

53. On January 18, 2019 Defendant by counsel responded that by providing Nascentia, rather than Ms. Gibson, with a lock box key code, they believed that they had satisfied their obligation to accommodate her. They also alleged that Ms. Gibson has been in "constant violation" of her lease and would not renew her lease.

54. On January 21, 2019, Ms. Gibson was unable to utilize medical transportation arranged by Nascentia to get to a doctor's appointment because the transportation was to be provided by a third-party organization, Oswego County Opportunities, because they could not get into the property.

55. Plaintiff's counsel emailed Defendants' counsel on January 21, 2019 emphasizing the need for reasonable accommodation regarding Ms. Gibson's ability to allow entry to guests and asking about renewal of the lease which was to expire in ten days. As of the time of filing this action, Defendants have not responded to this request for accommodation and/or modification, nor have Defendants renewed Ms. Gibson's lease.

56. Defendants have failed to install a remote door lock and refuse to provide Ms. Gibson with the key code to the lock box, thereby denying her reasonable accommodation for the use and enjoyment of her home.

57. Defendants have refused to renew Ms. Gibson's lease.

58. Defendants' delay since Ms. Gibson's initial reasonable accommodation request in August 2018, combined with Defendants' repeated statements about Ms. Gibson moving out, with Defendants' allegations of lease violations, and with their refusal to renew her lease have caused Plaintiff to suffer damages. Defendants' unlawful policies and discriminatory conduct described above have caused her financial harm as well as physical, emotional, and psychological harm.

59. By engaging in the unlawful conduct described above, Defendants acted intentionally and maliciously, and/or negligently, carelessly, and recklessly without regard for, and to the damage of, the rights and feelings of Plaintiff Laura Gibson. Therefore, punitive damages against Defendants are warranted.

## CAUSES OF ACTION

### Violation of the Fair Housing Act of 1968

60. Plaintiffs restate and reallege all paragraphs above as if fully set forth.

61. Defendants, through their actions, have discriminated against Plaintiff Laura Gibson based on her disability in violation of the Fair Housing Act of 1968, as amended by the Fair Housing Amendment Act of 1988, 42 USC §3601 *et seq*.

62. The Defendants' actions described herein constitute unlawful discrimination against Plaintiff Laura Gibson in the terms, conditions or privileges of a rental of a dwelling because of Plaintiff's disability in violation of 42 U.S.C. §3604(f)(2).

63. The Defendants' actions described herein constitute unlawful discrimination against Plaintiff Laura Gibson in the refusal to permit reasonable modifications and/or refusal to make reasonable accommodations in rules, policies, practices, or services where such accommodations are necessary to afford such person equal opportunity to use and enjoy the dwelling because of Plaintiff's disability in violation of 42 U.S.C. §3604(f)(3).

64. The Defendants' actions described herein constitute the making of a statement with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination, or an intention to make any such preference, limitation, or discrimination, based on Plaintiff Laura Gibson's disability in violation of 42 U.S.C. §3604(c).

65. The Defendants' statements that Plaintiff should move out, that Defendants would not renew her lease, and Defendants' failure to renew Plaintiffs written one-year lease which expired January 31, 2019 constitute unlawful coercion, intimidation, threats, and/or interferes with Plaintiff in the exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected by 42 U.S.C. 3216 *et seq.*

## Violation of the New York State Executive Law

66. Plaintiffs restate and reallege all paragraphs above as if fully set forth.

67. Defendants through their actions, have discriminated against Plaintiff Laura Gibson based on her disability in violation of the New York State Executive Law §296.

68. The Defendants' actions described herein constitute unlawful discrimination against Plaintiff Laura Gibson in the terms, conditions, or privileges of the rental or lease of a housing accommodation, or in the furnishing of facilities or services in connection therewith, based on Plaintiff Laura Gibson's disability in violation of New York State Executive Law §296(5)(a)(2).

69. The Defendants' actions herein constitute unlawful discrimination against Plaintiff Laura Gibson in their refusal to permit reasonable modifications of the premises necessary to afford her full enjoyment of the premises in violation of New York State Executive Law §296(18)(1).

70. The Defendants' actions herein constitute unlawful discrimination against Plaintiff Laura Gibson in their refusal to make reasonable accommodations in rules, policies, practices, or services necessary to afford her equal opportunity to use and enjoy her dwelling in violation of New York State Executive Law §296(18)(2).

71. The Defendants' actions described herein constitute the making of a statement, with respect to the lease of a dwelling, which indicated a preference, limitation, and/or discrimination

based on Plaintiff Laura Gibson's disability in violation of New York State Executive Law §296(5)(a)(3).

72. The Defendants' actions described herein constitute retaliation against Plaintiff in violation of New York State Executive Law §296(7) because she has opposed Defendants' unlawful denial of her reasonable modification request.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter an **ORDER**:

(a) **DECLARING** that the discriminatory housing practices of the Defendants as set forth above violate the Fair Housing Act, as amended, Title 42 USC §3601 *et seq*;

(b) **DECLARING** that the discriminatory housing practices of the Defendants as set forth above violate the New York State Executive Law § 290 *et seq*;

(c) **ORDERING** that the Defendants take appropriate affirmative action to ensure that the activities complained of above are not engaged in again by them or any of their agents;

(d) **AWARDING** appropriate compensatory damages, including but not limited to damages caused by economic loss, emotional distress, and punitive damages to the Plaintiff and against the Defendants in accordance with 42 U.S.C. 3613(c)(1) and New York State Executive Law § 297(9);

(e) **AWARDING** the Plaintiff her costs and reasonable attorney fees in this action in accordance with 42 U.S.C. 3613(c)(2) and New York State Executive Law § 297(10); and

  (f)  **AWARDING** the Plaintiff other and further relief as the Court deems just and proper.

## JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this matter.

Dated: February 14, 2019     Respectfully submitted,
   Syracuse, New York

/s/ Kimberly L. Morrell
_____
**Kimberly L. Morrell, Esq.**
Bar Roll No. 520989
Attorney for Complainants
CNY Fair Housing, Inc.
731 James Street, Suite 200
Syracuse, New York 13203
Ph: (315) 471-0420
F: (315) 471-0549
Email: kmorrell@cnyfairhousing.org